Lee Lawless, Federal Public Defender for the Eastern District of Missouri, here on behalf of Appellant Wendell Johnson. Mr. Johnson filed a motion pursuant to 2255 in the Southern District of Illinois after extensive briefing before the District Court. The District Court denied that motion without a hearing. This court then granted a Certificate of Appealability finding that we had made a substantial showing of the denial of a right to effective assistance of counsel. We believe that the denial of a hearing in this case was an abuse of discretion and that resolution of that question depends on answering the following question. Is the distinction between two significantly different mental health diagnoses important? Does it matter? The evidence in front of the sentencing judge was that Mr. Johnson had severe antisocial personality disorder. The evidence that we presented to the district judge, validated by three different doctors as I will discuss later, was that that diagnosis was mistaken and that in fact he suffered from post-traumatic stress disorder. Vast difference. The District Court said in its order, mistakenly, that the differences were not significant, that the correct diagnosis was irrelevant and it wouldn't have made any difference to the sentencing court and therefore found no prejudice under the prejudice prong at Strickland. While this court in Donnelly has previously held that the correct diagnosis, presenting that to the District Court judge, is important. Counsel, I don't see why the name attached to something matters. The question is what danger accompanies a person so described? So what interests me is whether there was an offer to show that post-traumatic stress disorder made him less dangerous than he was depicted or more treatable because one might think those would matter a lot to sentencing. Yes. By definition, post-traumatic stress disorder is treatable. I'm not asking your view. I'm asking about the evidence that was presented to the district judge. Was evidence presented about these two potential differences? Judge, when you say evidence, we didn't have a hearing. Look, you present evidence to get a hearing. You present affidavits saying if we had testimony, here's what it would show. Were affidavits presented on this issue, on either of the two issues I identified? I believe that between Dr. St. Martin, Dr. Cross, and Dr. Cloninger, in discussing post-traumatic stress disorder, that there was an indication that it was a treatable condition. But you don't have anything that you want to point us at that we should go and read? These mental health conditions are so well-known. The court itself said that it... They are not well-known to me, and perhaps that reflects my own failing. That's why I'm interested in evidence. I'm not a physician. Nor am I. Good. That's why we need evidence. I'm pretty sure Judge Rosenstengel isn't a physician. The United States government, in its publication, indicates that post-traumatic stress disorder is treatable, even if there is a delay between the events and the onset, that it remains treatable. Antisocial personality disorder is what we commonly think of as being a criminal, having a criminal mentality. Counsel, you suggest that that had a stigmatizing effect on the defendant. Is there anything in the record to suggest that the sentencing judge was told that this makes someone irredeemably antisocial or that it's untreatable? Antisocial personality disorder, from the defense perspective, is a kiss of death if it comes back on a client because it is well-known, I think, among all the district courts when you have that diagnosis. And the report suggests no treatment, that no treatment can be provided, that that is the situation, that it is, in fact, a condition for which at this time there are no known treatments. The DSM-3, 4, and 5 all indicate that. We presented reports from Drs. St. Martin and Cross. Both of them examined Mr. Johnson. They reviewed his history. They administered a battery of validated tests, and they made diagnoses based on validated criteria as set out in the DSM system. The diagnosis that was presented to Judge Steele, the sentencing judge, was part of a one-page report on admission to the Illinois Department of Corrections. It indicated no indication that any standardized or verified tests had been administered or that the diagnostic criteria was in any way validated. Both Drs. St. Martin and Cross indicated that from their testing, Mr. Johnson was intellectually disabled, having an IQ somewhere between the mid-60s and the low 70s. And it's absolute. I have never heard or encountered anyone with antisocial personality disorder, the hallmarks of which are being remorseless, manipulative, not sharing in the set of values that we do as essentially a sociopath. But no one with an IQ in that range have I ever heard of having antisocial personality disorder because the essence of that disorder is to be able to get over on people. That misdiagnosis that appeared in the pre-sentence report was endorsed by sentencing counsel because sentencing counsel had failed to conduct any independent investigation or seek a diagnosis from any mental health professional. The diagnosis from this prison report was 12 years old, and it was a one-time confinement diagnosis. There was also a finding there of intermittent explosive disorder, which Dr. Cloninger, a world-renowned psychiatrist, also said was completely invalid. I would like to reserve the rest of my time for rebuttal if I could. Thank you, Mr. Wallace. Mr. Stumpf? Thank you, Your Honors. Nathan Stumpf on behalf of the United States. I think the key here is that whatever we call it, whether it's a severe antisocial personality disorder or PTSD, at sentencing that was a mitigating fact. It was not an aggravating fact that Mr. Johnson had some history of mental illness and had struggled throughout his childhood. I really think that's the key because maybe the best analogy I could come up with would be like a law school exam. You take the exam, and you get a C. I'm not speaking from experience, but you get a C, and you go talk to the professor afterward. If you said, well, I would have elaborated 10 more pages on this one point if I had more time, the professor might say, well, I gave you credit for that point. The problem with your essay wasn't that you didn't go on for 10 pages on that one point. It was that you had all these other issues that you didn't point out. I think that's the same thing here. We've got some essentially Monday morning quarterbacking here coming back and saying, well, Mr. Holmes, as Mr. Johnson's counsel, should have investigated all of his background, should have fleshed out all these details more, and had he hired these particular experts would have come up with a different conclusion about his mental illness. But all of that was not under dispute. It was all pointed out to the district court at sentencing. The government did not contest any of it. There's nothing in the record to show where the government was trying to use any of that information against Mr. Johnson. So really we're just talking about fleshing out details for points that were made. So there wouldn't be any ineffective assistance of counsel. I want to say just a couple points on the treatment issue. I just looked at Mayo Clinic online. I'm not a doctor either, and I don't know this stuff. But it seemed to me that antisocial personality disorder is treatable potentially with psychotherapy. And what Mayo Clinic said was it depends on the person's willingness. I must say asking whether X is treatable is much less important than asking what effect on behavior would treatment have. And so far as I can see, no one has asked that question about either of these names or other possibilities. Now, I may be misunderstanding what's in the record. I asked Mr. Wallace for pointers. I'm now asking you. Is there someplace I can go to the record to see where this is discussed? I don't think so. I don't think that that point was addressed in the record because that antisocial personality disorder was not seen as something that the court should take into account at sentencing other than as a mitigating circumstance. Forget about what happened at sentencing. You can put into the record in this 2255 proceeding statements saying the risk of misbehavior from post-traumatic stress disorder is much more subject to mitigation than the risk of misbehavior from antisocial personality disorder. Is there any such evidence? I'm not aware of any. Neither side is pointing me to any. I don't have that. Your Honor, I could address the attorney affidavits issue briefly. I think the district court was the gatekeeper here, but also the finder of fact in the 2255 setting. It was not an abuse of discretion to strike those affidavits. They basically invaded the province of the court by trying to opine about what would have been reasonable conduct for an attorney in Mr. Holmes' position. I also think because the district court did not go to the performance prong of the Strickland standard, but only to the prejudice prong, that in the end it was a wash. It didn't matter. Unless the court has any other questions. Thank you. All right. Thank you, Mr. Stone. Mr. Lellis. Thank you. At sentencing, Judge Steele was looking at this gentleman's criminal history record. Most of the more severe matters were back when he was in his early 20s. But his concern had to do with whether or not he could be pointed towards anything that would suggest rehabilitation. He asked for that. There was nothing presented to him because nobody had bothered to get the correct diagnosis. It wasn't that Mr. Holmes didn't get this expert or that expert. He didn't get any expert. He didn't get anybody to look at a history that was 12 years old. He didn't talk to anybody. He didn't get any records. Over 95% of the criminal defendants in the Seventh Circuit plead guilty. Sentencing advocacy is a key component. It's not just an afterthought. It is a key component of effective representation of defendants. And of the other 5%, maybe, what, 1% or 2% get dismissed, the rest go to trial, and 90% of those are convicted. So the notion that you can just go in and say, well, I ratify the pre-sentence report, which has this completely different purpose than advocacy for the defendant. It's just not adequate. Antisocial personality disorder is not mitigating. It's the worst thing that you can come across. There's a whole history, discussion of antisocial personalities in the cases that deal with death penalty mitigation, trying to deal with that diagnosis because it's so damaging. It means that somebody essentially doesn't abide by the same rules that we do, as opposed to post-traumatic stress disorder, which is a problem when it's combined with alcohol and substance abuse, as it was in this case and Mr. Johnson's case. But as you've seen from any number of veterans that come back, it is treatable. Thank you very much. Thank you so much, sir. Thank you. Case taken under discussion.